## JOHN IVEY v. THE STATE.

1. THEFT OF CATTLE—HIRED HAND.—Where two persons were indicted for theft and one put upon trial, and the testimony showed that the accused was present only as a hired hand of his codefendant, it devolved upon the State to prove, in order to convict upon evidence of the recent joint possession by the parties indicted, of the stolen property, that the defendant had knowledge that the taking was illegal, or that the circumstances were such as to charge him with such notice.

2. THEFT—TESTIMONY.—On a trial for theft of cattle, the State cannot prove the possession by the accused of stolen cattle other than those described in the indictment, unless it be shown that they were taken at the same time by the same persons.

3. SAME.—Should such testimony be admitted, it is error to exclude evidence that defendant had been tried and acquitted for theft of the other cattle.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Dave Ezelle and John Ivey, the defendants, were indicted for theft of a steer, the property of Elizabeth Pfluger. There was a severance, and Ivey alone was put upon trial.

The testimony showed that on the last day of July, 1873, two men, riding gray horses, were seen in the neighborhood of Pfluger's, driving a bunch of cattle in the direction of Austin. A witness pursued them about a mile, headed them, and at one time was within fifty yards. Witness recognized defendant as one of the men. Witness did not then know defendant, but recognized him next week by a bump on his face. Another witness met the same men and the cattle about two miles from Pfluger's and in the direction of Austin. This witness thought the *other man* was Ezelle.

The next morning Pfluger, his brother, and Adams, started to pursue the trail of the stolen cattle. They were found, and four or five identified, in a pasture rented by Ezelle, about five miles north of Austin. The Pfluger party secreted themselves near the pasture for some time, watching the cattle. During the day two men entered the pasture, *rounded up* the cattle, *cut out about* twelve, and drove them out of the pasture, and started with them towards Austin. The Pflugers followed, and when within 250 yards of the cattle, the two men left the cattle in the prairie and rode back in direction of the pasture.

The Pfluger party came to Austin, obtained process for the two men, *describing them in the affidavit as unknown.*

Further investigations the next morning resulted in finding some of the cattle at Ezelle's *butcher yard* and some at a neighboring yard, driven there and disposed of by the defendants, but sold by Ezelle.

The defendants were arrested on the 2d or 3d of August, and an examination was had before a justice of the peace. Evidence satisfactory to the justice was produced, and the defendants were released.

At the next term of Travis District Court four indict-

ments were preferred against Ezelle and Ivey for the theft of that number of cattle in this herd, and at subsequent terms they were tried and acquitted upon three.

The defendant, Ivey, on the trial, offered in evidence a bill of sale to Ezelle for twenty-two head of cattle, among them *the beef* described in the indictment, of date August 1, 1873, and signed by one S. J. Cox. No one knew Cox. Several witnesses present at the transaction proved the execution of the bill of sale and described Cox, the maker. A witness, Wells, testified to buying another bunch of cattle a month earlier from a man named S. J. Cox. The bill of sale to Wells was also produced.

Three witnesses testified that Ezelle and Ivey were in Austin the evening before the beeves were bought until sundown, (the evening Pfluger saw the men on the gray horses ten miles north of Austin, half an hour before sundown, driving the stolen cattle.)

It also appeared in evidence that Ezelle was engaged in the butchering business, had two butcher stalls in Austin, and a yard one and a half miles north of the city; and that Ivey was hired by Ezelle at twenty-five dollars coin per month, and had no interest in the business.

Defendants objected to the testimony as to *other beeves* stolen and found in Rutherford's pasture, and after it was admitted defendants asked the witnesses (who had testified that they had been called as witnesses on the trial of defendants for the theft of the others) " what was the result of the *other* trials? " The court, on objection by the district attorney, excluded the question and answer.

The defendant offered the records of the court in the three other cases for theft, and the verdict and judgment in each case of acquittal. This evidence was also excluded.

The instructions sufficiently appear in the opinion.

The jury found defendant guilty, and fixed his punishment at two years in the penitentiary and " recommended

him to the clemency of the court." Judgment was rendered accordingly, and defendant appealed.

*D. E. Thomas* and *N. G. Shelley,* for appellant, filed a lengthy argument in this cause, too lengthy for insertion, of which the following gives some of the main points presented:

The bill of sale from Cox to Ezelle, on proof of its execution, is presumed to be *bona fide,* unless impeached by evidence of fraud. The law never presumes fraud, much less a forgery. The bill of sale being proven and read to the jury, the party assailing it for fraud must prove the fraud to the satisfaction of the jury. (Tuck. Comm., vol. 1, marg., p. 240.) This rule is of universal application. (Turner *v.* Lambeth, 2 Tex., 369; Tompkins *v.* Bennett, 3 Tex., 47; Paxton *v.* Boyce, 1 Tex., 317.)

The charge of the court that the burden of proof was on the defendant to prove the sale in good faith, was erroneous.

While possession of recently-stolen property is *prima facie* evidence of theft, yet a reasonable explanation, uncontradicted, is to be taken as true, and a reasonable explanation given by the defendant may be sufficient to throw the burden of proof on the prosecution. (Bur. Cr. Ev., 454; 1 Stark., 512, 513; Wills' Cir. Ev. 48.)

To justify the presumption of guilt from the possession of property recently stolen the possession must be actual and exclusive. The explanation uncontradicted there must be taken as true. (47 Eng. Com. L. Rep., 370; Jones *v.* State of Mississippi, 30 Miss., 654.)

The court charged the jury: "If the steer charged to be stolen was bought in good faith by defendant or Ezelle, not knowing it to be stolen, then defendant (Ivey) is not guilty of theft"—leaving the jury to infer that if Ezelle bought the steer, knowing it to be stolen, then Ivey, the employee, was guilty, whether he knew that fact or not; at least it devolved on defendant to prove he did not know

the property to be stolen. And the bill of sale, the court said, was not conclusive evidence of that fact, but the court refused to say it was even *prima facie* or presumed to be *bona fide.* The court instructed the jury that they might believe that the bill of sale was gotten up to cover a sham sale, when there was no evidence of sham sale, no proof of its being a forgery, or what it did not purport to be on its face.

The witness, Charles Pfluger, was permitted (over objection) to testify as to other cattle in the pasture with the steer charged to have been stolen. This proof was calculated to prejudice the minds of the jury, unless defendant was permitted to prove that he had been tried for the theft of those cattle and acquitted, which testimony was excluded by the court. In this there was error.

*George Clark, Attorney General,* for the State.

REEVES, ASSOCIATE JUSTICE.—The defendant asked the court to instruct the jury "that the bill of sale introduced in evidence is on proof of its execution presumed to be a *bona fide* transaction, unless impeached by evidence of fraud."

There was no error in refusing to give this instruction in the form it was asked.

The possession of property which has been recently stolen unexplained raises the presumption that the party in possession is the offender. This presumption may be removed by evidence showing how the property was acquired, as that it came into the possession of the party by purchase in ignorance of the character of the title, or, if he purchased from the thief himself, that he purchased in ignorance of his character. (Burrill on Circumstantial Evidence, 539, 540.) Where the possession has been explained, and the account is reasonable, and no unfavorable

circumstances appear against it, it is then incumbent on the prosecution to show that the account is false. (Ib., 446, 454; 3 Greenl. Ev., § 32.)

There is some difficulty in the application of the charge as given by the court to the defendant, Ivey, who was jointly indicted with Ezelle and Cox.

The court instructed the jury "that the burden of proof is upon the defendant (Ivey alone being on trial) to prove the sale in good faith." Again, "if the steer charged to be stolen was bought in good faith by defendant or by Ezelle, not knowing it to be stolen, then the defendant is not guilty of theft."

The charge fails to distinguish between Ezelle and Ivey, but is made to apply to both alike, without regard to any distinction founded on a different state of facts.

It appears that Ezelle, and not Ivey, bought the animal from Cox; and if Ivey is guilty of theft, it must be because he acted in concert with Ezelle, knowing the steer was stolen, or that it was acquired under circumstances amounting to notice of the character of Ezelle's purchase, and not as being himself the purchaser. His presence merely, as a hired hand of Ezelle, in a lawful business, would not of itself be criminal, unless he knowingly aided Ezelle in the theft. If the bill of sale from Cox to Ezelle was a real claim of title to the property, it would be a defense to the prosecution; or if it was only a pretext to commit a theft, under color of title, it could only affect Ivey in so far as he knowingly aided Ezelle to commit the offense.

It is further objected that the court erred in permitting the State to prove that other stolen stock, taken from the same neighborhood, were found in Rutherford's pasture, under the control of Ezelle. To make this evidence admissible as against Ivey it must be shown that the stolen stock and the steer in question were taken at the same time, and formed but one transaction, and that Ivey's acts were such as to show a guilty connection with Ezelle when

it was so taken or while it was under his control. The rule is different where acts of theft are separate and unconnected. (1 Whart. Am. Cr. Law, 648, 649, 728; 3 Greenl. Ev., § 31.) The evidence having been admitted, the defendant should have been allowed to prove that he had been acquitted of the charge.

For error in the instructions of the court, the case is reversed and remanded.

REVERSED AND REMANDED.