## JOHN CAMPLIN *v.* THE STATE.

1. THEFT—INDICTMENT.—An indictment for theft described the stolen property as "two work-oxen, the property of one T. A. J." *Held*, that the description is sufficiently certain.

2. SAME—FRAUDULENT TAKING.—A fraudulent taking of the property of another implies that the taker knew it was not his own, and that it was taken to deprive the owner of its value.

3. SAME—EVIDENCE.—When property alleged to have been stolen was taken by the accused under a claim of right, evidence against him of a fraudulent taking may be rebutted by proof of his good faith in appropriating it as

his own; and, if the entire evidence leaves a reasonable doubt of the· fraudulent intent, the jury should acquit.

4. SAME—CHARGE OF THE COURT.—In prosecutions for theft, if the accused adduces evidence tending to prove that he took the property in good faith, under a claim of right, it is error to omit and refuse to instruct the jury· to consider such evidence in determining their verdict.

APPEAL from the District Court of Travis. Tried below before the Hon. J. P. RICHARDSON.

A full statement of the case is given in the opinion of the court.

*Walton, Green & Hill,* and *C. I. Evans,* for the appellant.·

*H. H. Boone,* Attorney General, for the State.

ECTOR, Presiding Judge. The defendant was indicted and convicted for the theft of two oxen, alleged to be the· property of one Thomas A. Jourdan, and his punishment assessed at two years' confinement in the penitentiary. The· defendant filed a motion for a new trial, and also a motion in arrest of judgment, both of which were overruled by the· court. The indictment is a good one. The description of the property alleged to have been stolen is set forth with sufficient certainty and particularity; they are described as· two work-oxen, the property of Thomas A. Jourdan. See· *Quince Henry* v. *The State,* Galveston term, 1876; *Short* v. *The State,* 36 Texas, 645.

As the decision of this case will be controlled by the· charge of the court below, and the refusal of the court to· give a charge asked by defendant, it would be proper that. we give the charge, and also one of the instructions asked by the counsel of the defendant and refused by the court.. The following is the charge given to the jury:

"The defendant is charged with theft of cattle. To sus-- tain the charge it is necessary that the state should prove· by the evidence, beyond a reasonable doubt, that the·

defendant took the cattle described in the indictment from the possession of the owner, without the consent of said owner, with intent to deprive him of the value of the cattle, and to appropriate it to defendant's use or benefit. If you find the charge thus sustained you will return a verdict of guilty, and assess the punishment at imprisonment in the penitentiary not less than two nor more than five years.

"If you find the charge not sustained by the evidence, you will return a verdict of not guilty. Possession of property which has been recently stolen is evidence of the guilt of the party in whose possession it has been found—not conclusive, but to be considered by the jury in connection with all the other facts and circumstances in the case tending to satisfy your minds, beyond a reasonable doubt, of the guilt of the defendant. Where two or more persons act together in the commission of an offense, with a common intent to accomplish the purpose, they are all principals, and equally guilty, though but one actually does the deed."

The theory of the defense was that the defendant bought the said oxen from one L. G. Britton, in good faith, and paid him, the said Britton, for them, believing they were his property. One of the charges asked by the defendant, and which the court below refused to give, is as follows:

"If the jury believe from the evidence that the defendant bought the property, alleged to have been stolen, from L. G. Britton, and did not steal the same himself, nor was concerned in stealing thereof, then you will find the defendant not guilty."

In order to determine whether the above should have been given, or some charge substantially instructing the jury that if they believe from the evidence the defendant came into possession of the said oxen by purchase from L. G. Britton, in ignorance of the character of his title to the same, then they will find the defendant not guilty, it is necessary to give a part of the testimony introduced on the trial.

By reference to the facts testified to by some of the witnesses, it must have been apparent to the court that the real issue presented and raised by the evidence on the part of Camplin was, as before stated, that he appropriated the oxen in good faith, believing he had a right to do so under the purchase from Britton.

When the property alleged to be stolen is taken under a claim of right, the jury should be instructed as to what it takes to constitute a fraudulent taking. A fraudulent-taking of the property of another embraces the idea that the taker knew it was not his own, and also that it was done to deprive the true owner of its value; and a taking under a claim of ownership, when the evidence shows reason to believe the claim well founded, will not warrant a conviction of theft. When property is taken under a claim of right, and a party is indicted for the theft of it, the evidence of a fraudulent taking may be rebutted by proof of good faith in the appropriation of the property. If the whole evidence leaves a reasonable doubt of the fraudulent intent, the jury should acquit the defendant.

In this case Thomas A. Jourdan testified that he was the owner of the oxen stolen; that they were taken without his consent; that he turned them out in the range about his house on Monday morning, in July, 1875; that he lives in Travis county; that on the following Sunday, after turning his oxen out, he found them in Mr. Camp's butcher-pen, in the city of Austin. One Cook claimed them; he had purchased them from Camplin, the defendant, and had agreed to pay for them. On claiming the oxen they were delivered up to him; that he then went with Mr. Cook to a justice of the peace, and had the defendant arrested for the theft of the oxen. On the trial defendant introduced in evidence a bill of sale, purporting to be signed by L. G. Britton, to Camplin, for a lot of cattle, including said oxen, as shown by the marks.

Wm. Rutledge, a witness for the defendant, testified as. follows : "I have known defendant about two years. He lives near my father's, near Jollyville. I live eighteen miles from Austin, on the Burnett road. In the month of July, 1875, I was employed by John Rutledge, my cousin, to herd cattle. Some of the cattle were claimed by Britton and some by John Rutledge. I had been with them for some time. They were herded on the prairie, on Gilleland's creek, near Merrilltown. I remember when defendant first came to the herd. He and Britton were then on a trade. The two oxen claimed by Mr. Jourdan were brought to the herd, and turned into it by Britton himself, about two days before the defendant ever came to the herd. I have known Britton some time ; do not think he and defendant had ever met before this time ; at least I know that they had never been intimate. By direction of Britton we cut off fifteen head of cattle from the herd, which Britton said he had sold to defendant ; among them were the red ox, with the points of his horns sawed off, and the yellow or dun one claimed by Mr. Jourdan. After these cattle were cut off from the herd the defendant, Britton, J. T. Rutledge, and myself drove them to Austin. I understood from a con- versation between defendant and Britton that defendant had bought the cattle from Britton. When we arrived near Austin we put them in a pen on the outskirts of the city. It was not very far from Seiders' pasture. I don't know who owned the pen, nor by what name it was known ; I never saw it before. I think it must have been a mile, or two miles, from Mr. Camp's slaughter-pen. We all four then went to the house where Mr. Britton's mother lived. Then Britton produced a bill of sale to Camplin for some cattle ; at request. of Britton, John T. Rutledge and myself signed it as wit- nesses. I saw Britton sign the bill of sale ; did not see any money pass between Britton and the defendant ; have not seen Britton since. I have heard he has fled the country to

escape arrest; don't know what he is charged with. The defendant has lived near my father's farm, and has been considered in the neighborhood as a hard-working, industrious man."

John C. Rutledge testified as follows: "I live near Jollyville. I am a brother to Wm. Rutledge, the witness who has just testified, and a cousin to John T. Rutledge. I have known the defendant about two years. He has lived during that time in my neighborhood, and worked on a farm. By his sobriety and industry he has acquired the reputation in the community of being an honest, industrious, and upright man. He can neither read nor write." It was also in proof that defendant made no concealments about the oxen; that he went with Cook to a lawyer and justice of the peace for the purpose of consulting them in regard to getting his cattle inspected.

We deem it unnecessary to give the testimony introduced by the state. We think enough has been given to show that the defendant was entitled to a charge applicable to the facts in evidence, as testified to by the Rutledges.

If the oxen were stolen by some one else, and came to the appellant by purchase, in ignorance of the character of the title or of the party from whom he bought the property, he was guilty of no offense. See Burrell on Cir. Ev. 539, 540; *Ivey* v. *The State*, 43 Texas, 425. Or if some other person stole the oxen, and the defendant afterwards received them, by purchase or otherwise, knowing the same had been stolen, he would be guilty of receiving stolen property.

For material deficiency in the charge given, and for refusing to give charge number two, asked by the appellant (which is assigned by the appellant in error), the judgment is reversed and the cause remanded.

*Reversed and remanded.*