[No. 3522.]

## Frank Kelley *v.* The State.

Theft — Evidence — Charge of the Court.— In a trial for theft it is not competent for the State to prove the theft of other property at the same time and place as of the property in question, unless such proof conduces to establish identity in developing the *res gestæ*, or to prove the guilt of the accused by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property for the theft of which he is on trial.   And when such proof is admitted for either of the legitimate purposes indicated, the charge of the court must apprise the jury of the purpose of the proof.

Appeal from the District Court of Gonzales.   Tried below before the Hon. George McCormick.

On the 22d day of June, 1883, an indictment was returned into the district court of Gonzales county, charging the appellant Frank Kelley and Jodie Blain with the theft of an animal of the horse species from the possession of James A. Baker, who was then and there holding possession for the owner, Mrs. Margaret Squires.   On the 10th day of April, 1885, appellant was tried alone and was found guilty by the jury of the offense charged in the indictment, and his punishment was assessed at seven years' confinement in the penitentiary.

James A. Baker was the first witness for the State.   He testified that Mrs. Squires owned a mare and colt running on the Town prairie, near Mr. Scheske's place.   Witness went to that range to brand the colt, but on that trip failed to find it.   He afterwards found the colt on the San Marcos river in the U-bar brand (the bar under the U).   Witness first went to the range to brand the colt in the summer of

1882. He then found the mare and colt, but did not brand the latter, because he then became fearful that if he did it would become infested with worms. He then went again in April, 1883, with Lee Collins, E. Scheske and others, and, as stated, found the colt in the U-bar brand. The letter U was also branded on its jaw. Its tail was bobbed and one of its ears gotched. This was about a week after his first unsuccessful search for the colt, as before stated. When found, the colt was on the west side of the San Marcos river, about five miles from the range on which the witness had last seen it, and near old man James Hodges's place. It was with a bunch of eight or ten colts and fillies, some of which were branded OL, some U-bar, and one in the hatchet brand. All of these brands were fresh. The witness did not know, of his own knowledge, by whom the U-bar brand was claimed.

Mrs. Squires, who was witness's aunt, lived in Bandera county, and had lived there since the summer of 1881. When she left for that county, in 1881, she requested witness to look after her horses, and gave him exclusive control over her stock. The colt was about a year old when it was recovered by the witness. He had never seen it before but once, and that was when he went to brand it, in the summer of 1882. It was then very young. It was a sorrel mare colt. Witness did not know it by its flesh marks, as eight or nine months had elapsed since witness had last seen it. Various parties claimed and proved the other colts recovered at the same time. After recovering the colt, the witness kept it in his pasture until he sold it to a negro in 1884. Witness and the parties with him brought to the stock pens in Gonzales all of the animals they found with this colt on the west side of the San Marcos river, as stated, and their various owners came to the pens, proved and recovered their properties. The colt involved in this prosecution was the property of Mrs. Squires, and was the foal of one of her mares, branded RV. The mare was never missed from the range. The colt was taken in Gonzales county, Texas, without the knowledge or consent of the witness.

A. E. Scheske was the next witness for the State. He testified that he went with James A. Baker and Lee Collins to the forks of the river, where they found the alleged stolen colt. They found and got with this colt some eight or ten other colts and fillies. This colt was branded on the thigh with the U-bar brand, and U on the jaw. There were other animals in the bunch branded U-bar; others were branded OL, and one had the hatchet brand on it. The brands had about commenced to peel, and all of them looked to be

about thirty days old. Witness went with Collins and Baker to identify this colt, and did identify it as the foal of a mare that belonged to Mrs. Squires. The mare and colt had run the range near witness's place on the Town prairie, and witness knew them well, and knew the mare when the colt was born. The colt was about one year old when recovered. It was foaled in the spring of 1882, and was about a month old when the witness first saw it, which was when he returned from Kansas, in June, 1882. The colt, to the positive knowledge of the witness, was the foal of Mrs. Squires's mare, and belonged to Mrs. Squires.

Witness could not be positive about ever having had a conversation with the defendant about this colt. He had, however, some faint recollection of having a talk with him at his, witness's, field fence, about six months before the colt was missed from the range. He could not definitely recall the subject of that conversation, but it indistinctly occurred to him that defendant said something to him about the colt having, much to his surprise, recovered from worms in the ear.

William Weisenhunt was the next witness for the State. He testified that he knew Baker had a mare and colt, the mare branded RV, and that this mare ran in the range about Scheske's place. The colt ran with the defendant's horses, and witness first thought it belonged to the defendant. It had worms in its ears, and witness sent word to that effect to the defendant. Soon afterwards he met witness at De Witt's mill, in the town of Gonzales, and told witness that he did not own the colt, but that it belonged to the RV mare. Witness never saw the colt that was brought back, and could not say what colt it was.

James Hodges was the next witness for the State. He testified that he lived on the west side of the San Marcos river, about five miles from Gonzales. Scheske lived four or five miles distant from him, on the east side of that river. Some time in April, 1883, the witness ran a sorrel, gotch-eared colt out of his pasture, but did not notice the animal's brand. Witness saw the same animal around and about his pasture fence after he expelled it from the pasture. It was the same colt which Messrs. Baker and Collins came and got soon after. Witness was present when the parties got the colt, and knew it to be the same animal which he turned out of his pasture. Soon after witness drove the colt from his pasture, and before Baker came and got it, witness met the defendant and told him about the colt. He said that the animal was his; that he was driving a bunch of horses across the river some time before that, and left that colt

in the middle of the river, believing it to have been drowned. This was the only conversation witness ever had with defendant about the colt, and the colt was not then present. During the following November the witness saw a sorrel gotch-eared colt outside of and near his pasture, which colt was just like the one Mr. Baker got,— so nearly exactly alike that witness could not tell the two apart. Both were gotch-eared, and both were branded U-bar on the hip and U on the jaw. Witness's pasture and the pasture of the defendant were separated only by the San Marcos river. Witness did not know the sex either of the colt that Baker got or the one he saw afterwards in the fall.

The State then proved by the record of marks and brands that the defendant's recorded brand was U-bar (bar under the U) on the left hip. Then the State closed.

John Chenault was the first witness for the defense. He testified that the defendant was his brother-in-law. During the spring and summer of 1883 the witness frequently saw a sorrel gotch-eared colt, branded U-bar on the hip and U on the jaw, in the defendant's pasture, which said colt belonged to the defendant. It was a horse colt, and ran usually in the defendant's pasture. Witness never saw the colt claimed by Mr. Baker for Mrs. Squires. Defendant's pasture was on the east side of the San Marcos river, about four miles north of Gonzales. The river divides this pasture from that of Mr. Hodges on the west. There were several fords on the river between the two pastures, and there were two ways of getting from one pasture to the other. One way led through a lane and gate. By the other way one could go from one pasture to the other by merely fording the river. Cattle and horses very frequently went from one pasture to the other by crossing the river. The colt referred to by witness was a year-old-past in the summer of 1883. Defendant kept that colt until the summer of 1884, and sold him with his other horses to Sam Tate.

F. F. Wood testified, for the defense, that during the drought in July, 1883, he went to defendant's pasture to get a yoke of oxen. While hunting for his oxen he met the defendant, who asked him, witness, for assistance in driving from across the river one of his colts. Witness went with defendant and found the colt on the opposite side of the river, above and on the outside of Hodges's pasture, between it and the Kelman place. Witness and defendant drove that colt back to defendant's pasture, across the river. It was a sorrel, gotch-eared colt, branded U-bar on the thigh and U on the jaw. It was a horse colt, past a year old. The river was ford-

able at several places between the pastures of defendant and Hodges. Witness had often seen the colt since. Defendant sold it and his other horses to Sam Tate in the spring of 1884, but the colt got his ankle hurt before the horses were driven off, and the colt is still running at large on the range, near witness's place, with an enlarged ankle.

The defense next introduced the record of marks and brands, and showed that the RV brand was recorded in the names of ——, and —— Squires, and not in the name of Margaret Squires.

J. A. Baker, recalled by the State, testified that the RV brand was recorded in the names of Mrs. Squires's daughters, but Mrs. Squires had always used and controlled the brand as hers, and her daughters had never claimed the brand. Mrs. Squires's daughters were the wives of the witness and one Nathan Christian.

The motion for new trial raised the questions discussed in the opinion.

*W. S. Fly* and *Harwood & Harwood*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

Hurt, Judge. This is a conviction for the theft of a colt, the property of Mrs. Margaret Squires, alleged to have been taken from the possession of James A. Baker, who was holding the possession for the owner.

The appellant's brand was U̲ with a bar under it. It appears from the record that the colt was found on the range on the west side of the San Marcos river, near old man James Hodges's place. The colt, when found, was with some eight or ten colts and fillies. Some of these were branded OL, some were branded in the U̲ (U-bar), and one had the hatchet brand on it. The brands were fresh, and seemed to have been placed upon the animals about one month before. All of the stock were driven to the town of Gonzales and placed in a stock pen, at which place the respective owners proved property and took the stock.

Upon the trial, when the State proposed to prove that other stolen stock was found at the same time and place with the colt, and that said stock was freshly branded, and that the owners claimed and took the same, the defendant objected because not shown to have been taken at the same time and place, etc.

Under the facts of this case, the question is, was this evidence competent and admissible?

In Gilbraith's case, 41 Texas, 567, the defendant was charged with

the theft of a bull, the property of one Meyers. Upon the trial, over the objections of the defendant, the State proved that the hide of the bull was sold to one Taylor, a butcher, and that when the defendant brought the bull hide to his shop he also brought a red hide branded SS; that on the next day Meyers and Josh Russell came to his shop and claimed and took the hides; that Russell identified the red hide and claimed that it had been taken from his animal, and that his brand was SS.

Justice Moore held this evidence inadmissible, and in discussing the question stated this to be the rule: "Such evidence, however, is admitted mainly when it is necessary to establish identity in developing the *res gestæ*, or in making out the guilt of the defendant by a chain of circumstances connected with the crime for which he is on trial, or when the intent with which a particular act is done may be the gist of the offense." The fact that Gilbraith had sold to Taylor a hide from the animal of Russell at the same time that he sold the Meyers hide, and the further fact that the defendant had stolen the Russell animal or hide, were held not to serve in any way to identify the thing stolen, or to connect the defendant with the theft of Meyers's bull, nor to form a part of the *res gestæ*. Nor did these facts form links in a chain of circumstances proving the defendant's guilt of the theft charged.

In Ivey's case, 43 Texas, 425, wherein one Ezelle was jointly indicted with him for the theft of a steer, but had severed, the evidence went to show that the alleged stolen animal was found with three or four others which were identified, in Rutherford's pasture, about five miles north of Austin, which pasture was rented by Ezelle, and that the three or four others were also stolen property, and that they were placed in the said pasture at the same time that the animal for the theft of which Ivey was on trial was placed there. The defendant Ivey objected to the testimony as to the two or three other stolen animals which were found in the said pasture, at the same time that the alleged stolen animal was found, but the objection was overruled by the court, and the testimony was admitted.

In passing upon the competency of this evidence, Judge Reeves says: "It is objected that the court erred in permitting the State to prove that the other stolen stock, taken from the same neighborhood, were found in Rutherford's pasture, under the control of Ezelle. To make this evidence admissible as against Ivey, it must be shown that the stolen stock and the steer in question were taken at the same time and formed but one transaction, and that Ivey's acts were such as to show a guilty connection with Ezelle when it

was so taken, or while it was under his control.   The rule is diffeent when acts are separate and unconnected."

This much is extracted from the above quotation:   That the animals must be taken at the same time and form but one transaction.
Now, it is not stated in the opinion of Judge Reeves for what purpose the evidence would be admissible if the animals had been
taken at the same time so as to form but one transaction.   But evidently if the defense had relied upon mistake or claim of property,
this evidence would have been admissible to refute such a defense.
And under such defenses, this evidence would be admissible whether
the animals were taken at the same place and time or not.   Let us
suppose that the proof shows that the defendant went out upon the
prairies and gathered up the cattle belonging to several parties, and
that the cattle, when taken, were from one to six miles apart,
and that they were driven out of their range, say into an adjoining
county.   Now, if he should be indicted and tried for the theft of
one of the cattle so taken with the others, and, to prevent conviction, should rely upon a mistake or a claim, or the want of fraudulent intent, this evidence would be admissible, though, as shown by
this illustration, the cattle were not taken precisely at the same
time and place.

In Long's case, 11 Texas Ct. App., 381, proof that other stolen
cattle were in the bunch with that charged to have been stolen
was admitted for the purpose of connecting the defendant with
the possession of the cow charged to have been stolen.   To identify
the bunch of cattle with which the cow was driven to Seguin,
evidence that other cattle from the same range were taken at the
same time was held properly admitted.

In Jones's case, 14 Texas Ct. App., 35, the horses were all taken
about the same time or same night and from the same neighborhood.   In fact, in one sense the taking formed one transaction,
though not the same offense.   This being the case, the evidence of
the theft of other horses besides that charged in the indictment
was held admissible.

In the House case, 16 Texas Ct. App., 31, proof that other cattle
were branded and sold by the defendant at the same time was held
competent upon the grounds, 1, to identify the cattle; 2, to connect
the defendant with the transaction; 3, to show intent.

We have thought proper to allude to the above cases for the purpose of arriving at a rule by which to determine when such evidence is admissible.   And we are of the opinion that the rule as
stated by Judge Moore in Gilbraith's case, 41 Texas, 567, and reiter

ated in the Long and House cases, *supra*, is correct. The great difficulty is to determine when the facts of a case are such as to admit such evidence; the general rule being against the competency of this character of evidence.

But let us return to the case in hand.

1. The identity of the transaction is not shown by this evidence.

2. This evidence does not tend to explain the intent with which the defendant took the colt in controversy.

3. It does not form a link in a chain of circumstances which tends to fasten guilt upon the defendant. But, had this been a prosecution for illegally branding the animal, the evidence would doubtless have been admissible to show motive or intent on the part of defendant.

Viewing the question from the whole record, this evidence tended to prove that the defendant stole the colt only because it tended to show him to be a thief. The proposition deduced from this evidence is as follows: Defendant stole eight or ten other horses; therefore he stole the gotch-eared filly of Mrs. Squires. At what time and from what other place these other stolen horses were taken, the record is perfectly silent.

But it may be urged that the evidence tends to show that all of the colts and fillies were branded at the same time. This all may be true, but certainly this does not prove that they were taken at the same time, or near the same time, or from the same neighborhood.

To conclude, it is evident that the fact that other colts and fillies were with the colt in question and lately branded in the defendant's brand, when the colt was found, furnishes no evidence which can legally bear upon any issue raised in this case. A different state of circumstances may require this evidence. We are of the opinion that the court should have sustained the objections to this evidence.

Again, let us suppose the evidence to have been admissible, still it was very clearly the duty of the trial judge to have instructed the jury as to the purpose of such proof.

Because of the admission of the evidence above discussed, and because the court, in its charge to the jury, failed to explain the purpose of such evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered May 20, 1885.]