## No. 2749.

### Tom Williams *v.* The State.

Theft—Evidence—Fact Case.—As tending to establish identity in developing the res gestæ, or to prove guilt by circumstances connected with the theft, or to show the intent of the accused with respect to the property described in the indictment, it is competent for the State to prove the theft by defendant of other property at the same time and place of the theft in question, but it is not competent to prove a distinct theft committed by defendant at another time and place. See the statement of the case for evidence of distinct thefts *held* to have been erroneously admitted.

Appeal from the District Court of Lamar. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the theft of a pistol of the value of twenty dollars. The penalty assessed against the appellant was a term of two years in the penitentiary.

H. S. Bettes was the first witness for the State. He testified that he was the junior member of the hardware firm of Hicks & Bettes, doing business in the city of Paris, Lamar county, Texas. Witness knew the defendant as Tom Williams. Some time in December, 1886, Deputy Sheriff J. A Booth summoned witness to the court house in Paris to examine certain goods supposed to be stolen property. Witness repaired to the sheriff's office and there found displayed a large quantity of articles, con-

sisting principally of wearing apparel for men, women and children, shoes, socks, stockings, etc. Among the stock displayed he also saw a barrel of bottled beer, some soap, crackers, a Winchester rifle, four pistols and a box of cartridges. Among the pistols referred to was a Smith & Wesson double action forty-five calibre revolver, which the witness identified as the property of Hicks & Bettes. Some time during the summer or fall of 1886, Mr. Hicks took the said pistol from the store to his house, where he kept it for some time. When he brought it back to the store, he called the witness's attention to a small rust spot on the handle plate. The pistol was then placed in the show case, where it remained until it was taken away by some one. The witness did not remember observing the pistol after it was put back in the show case as stated, until he saw it among the articles exposed to view in the sheriff's office. The pistol witness saw in the sheriff's office was, to the best of the witness's belief, the pistol which Hicks took from the store to his house and afterwards brought back to the store. On the corresponding part of the handle plate it had a rust spot similar in shape and size to that on the pistol which belonged to Hicks & Bettes, and the pistol was of the same make, calibre and finish. Witness could not identify either of the other pistols as the property of his firm, but they were of the same patterns, calibre, make and finish of weapons carried in stock by his firm. The pistol identified by the witness as the property of his firm was not sold by witness to the defendant, nor did he give it to the defendant, nor did he consent that defendant should take it, nor that anybody else should take it. It was taken without the consent of the witness sometime in the fall of 1886, from the witness's store in Paris, Lamar county, Texas. The cash market price and value of the pistol was twenty dollars. Witness identified, at the same time he identified the pistol involved in this prosecution, other articles belonging to Hicks & Bettes, including three other pistols, some knives and forks and a saw, and had them taken back to the store.

On his cross examination, the witness said that his firm had seven or eight salesmen employed. He did not miss the pistol, nor know that it had been taken, until he found it in the sheriff's office as stated, and did not know when it was taken. He did not know of his own knowledge whether or not the said pistol was sold to any one by any of his clerks. Hicks called witness's attention to a rust spot on the handle plate, when he returned

the pistol to the store—his evident purpose being to ascertain whether it affected the pistol's commercial value. Witness replied that it did not impair the value in the least, and he put the pistol in the show case.

G. F. Hicks testified, for the State, that he was the senior member of the hardware firm of Hicks & Bettes. Some time in the summer of 1886, the witness took home from his store a certain silver mounted, double action, forty-five calibre Smith & Wesson pistol. He kept the pistol at his house for some time, and then took it back to the store. When he went to put it in the show case with other pistols, he observed a peculiar small rust spot on the handle plate of the said pistol, to which he called the attention of his partner, Bettes, and asked if it injured the commercial value. Bettes replied that it did not, and placed it in the show case with other pistols. Witness had no recollection of seeing that pistol again until he was called to the court house to examine a large quantity of supposed stolen goods found in the defendant's house by Deputy Sheriff Booth. He then saw the pistol described in the indictment, and identified it by the rust spot as the property of Hicks & Bettes. Among the other articles, witness identified a hand saw and a box of cartridges, by private price mark, as the property of his firm. A Winchester gun, three other pistols, and some knives and forks, corresponding with articles of the kind carried in stock by witness's firm, but not otherwise identified by the witness, were taken by Hicks & Bettes as their property, and were sent back to their store. Witness never sold the pistol described in the indictment to any one, nor did he consent that any one should take it. He knew the defendant, who was sometimes about his store, until he issued orders that defendant should be kept out of that establishment. Witness did not know when the pistol was taken from his store. He did not personally know that it was not sold by some one of the clerks.

J. L. Terrell testified, for the State, that he was a dry goods merchant, and, in 1886, did business in the city of Paris, Lamar county, Texas. Some time in December, 1886, witness was summoned to the court house in Paris, to examine certain goods held there by Deputy Sheriff Booth as goods taken from the defendant's house as stolen property. Witness identified about sixty-five dollars worth of dry goods, mostly broken suits of clothing, as having belonged to him, the said goods still having his price mark on them. A short time before the arrest of the defendant,

witness observed that some of the clothing he had in stock had been suit broken. He reprimanded his clerks for selling clothing in broken suits, and each of them denied having done so. Witness did not sell the goods described to the defendant, nor did he. consent for the defendant to take them.

R. F. Scott testified, for the State, that, at the same time Hicks & Bettes recovered their pistols, etc., at the court house, he recovered a barrel of bottled beer, which he knew by the private mark to have belonged to him at one time. He never sold that or any other barrel of beer to the defendant, nor never consented for the defendant to take it. He did not know when the said beer was taken from his store, nor by whom. Witness's warehouse was burglariously entered a night or two before the arrest of the defendant. Witness kept his beer in the said warehouse. The ruling of the court relates to the testimony of this witness and that of the witness Terrell.

J. A. Booth testified, for the State, that he was deputy sheriff of Lamar county in December, 1886. On the fifteenth day of that month, he went to the house of the defendant, in the city of Paris, and searched it for stolen goods. He found about three hundred dollars worth of general merchandise stored away and secreted about the defendant's premises; some under his floor and hearth, some in his trunk, some in his loft and some in his stable. Those articles were taken to the court house, where they were examined, claimed and recovered in parts by Hicks & Bettes, J. L. Terrell and R. F. Scott. The pistol described in this indictment was found by the witness between the mattresses on the defendant's bed.

Eli Taul testified, for the State, that very early on one morning, a short time before the arrest of the defendant, he saw the defendant's wagon at the defendant's back door. There were two bottled beer barrels then in the said wagon.

The State closed.

George Hart testified, for the defense, that on or about December 21, 1885, he, defendant and Jesse Hendricks boarded the train at Paris to go to Dallas. Deputy Sheriff Booth was on the same train. At Sherman, in Grayson county, Mr. Booth put the officers on the crowd for carrying a pistol, which the defendant then had. That pistol was a Smith & Wesson, double action, forty-five calibre pistol, and was "broken on top." Defendant gave the said pistol to the witness on the train, and witness placed it in his valise and took it with him to Dallas. He remained at

Dallas several days, when he returned to Paris and pawned the said pistol to the porter in L. C. Clark's saloon for two dollars and fifty cents. Frank Jones, the said porter, placed the said pistol behind the counter. The pistol mentioned in this indictment was here shown to the witness, who said it was similar and very like the pistol he got from defendant in the manner and at the time stated, but he could not positively identify it as the same.

Jesse Hendricks testified, for the defense, that he was on the train when Mr. Booth got after the defendant about having a pistol on his person. Defendant gave that pistol to George Hart, who took it in his valise to Dallas, where witness last saw it. That pistol was a Smith & Wesson, double action, forty-five calibre pistol; it was slightly broken on top, and had a small rust spot on the side, between the handle and the barrel. The pistol in evidence, claimed as the property of Hicks & Bettes, is very similar to and looks like the pistol given by defendant to Hart, but witness could not swear that it was the same.

Frank Jones testified, for the defense, that some time in December, 1885, or January, 1886, George Hart came into Clark's saloon in Paris, where witness was then working, and pawned to the witness, for two dollars and fifty cents, a certain Smith & Wesson double action, forty-five calibre pistol. That pistol had a small broken place on top. Witness put that pistol behind the counter, where it remained for several days, when defendant came to the saloon and claimed and demanded the pistol. Witness refused to let him have the pistol unless he paid the two dollars and fifty cents loaned on it. Defendant then left, but soon came back with Hart, who directed witness to let defendant have the pistol on the payment of the money, as the pistol was one which the defendant owned, and loaned to him while en route to Dallas in December, 1885. Defendant paid the two dollars and fifty cents and got the pistol. That pistol very much resembled the one in evidence, being of the same make, size and action, but witness could not say that it was the same.

L. C. Clark testified, for the defense, substantially as did the witness Jones.

Elias Young testified, for the defense, that he knew a certain Smith & Wesson double action, forty-five calibre pistol, which the defendant owned in December, 1885, and which he usually kept between the mattresses on his bed, and which he took with him on his trip to Dallas in December, 1885. The pistol in evidence looked very like the said pistol owned by the defendant in

December, 1885. Defendant's pistol had a small scratch or rust spot on the right side of the handle.

J. A. Booth testified, for the defense, that he went to Sherman in the fall of 1885 on the same train with defendant, Hendricks and Hart. He thought some of that crowd had a pistol, and so informed the officers at Sherman.

The defense closed.

H. B. Birmingham, county attorney of Lamar county, testified, for the State, in rebuttal, that he was present on a former trial of this cause, and heard the witness Elias Young testify on that trial. He did not, on that trial, say anthing about a scratch or rust spot on the handle of the defendant's pistol.

No brief for the appellant has reached the Reporter.

*W. L. Davidson,* Assistant Attorney General, for the State.

WILLSON, JUDGE. For the purpose of establishing identity in developing the res gestæ, or to prove guilt by circumstances connected with the theft, or to show the intent with which the accused acted with respect to the property for which he is on trial, it is competent for the State to prove the theft of other property at the same time and place of the theft of the property in question. (Willson's Texas Crim. Laws, sec. 1295.) But evidence of distinct thefts committed at other times and places than the theft in question is not relevant, and is inadmissible. Such evidence does not serve legitimately to throw any light upon the particular theft for which the defendant is on trial. (Gilbraith v. The State, 41 Texas, 567; Ivey v. The State, 43 Texas, 425; Kelley v. The State, 18 Texas Ct. App., 262; Alexander v. The State, 21 Texas Ct. App., 406.)

In this case, evidence tending to prove that other distinct thefts than the one for which defendant was on trial had been committed by him at different times and places, was admitted over his objections. This was material error, well calculated to injure the defendant, and because of such error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*